IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| WILLIAM PAUGH, | ) | |
| | ) | |
| Plaintiff, | ) | CV-04-763-ST |
| | ) | |
| v. | ) | OPINION AND ORDER |
| | ) | |
| KING HENRY'S, INC., | ) | |
| | ) | |
| Defendant. | ) | |

STEWART, Magistrate Judge:

## **INTRODUCTION**

Plaintiff, William Paugh ("Paugh"), originally filed this action in Multnomah County Circuit Court, *Paugh v. King Henry's, Inc.*, Civil No. 0405-04532, alleging various claims against his former employer, King Henry's, Inc. ("King Henry's"), including violations of the Fair Labor Standards Act ("FLSA"), 29 USC § 207. King Henry's timely filed a Notice of Removal to this court, alleging federal question jurisdiction under 28 USC § 1331.

///

///

1 - OPINION AND ORDER

On March 24, 2005, Paugh filed a First Amended Complaint, alleging the following claims against King Henry's:

(1) failure to pay overtime wages in violation of ORS 653.261 ("First Claim");

(2) failure to pay overtime wages in violation of the FLSA, 29 USC § 207 ("Second Claim");

(3) discrimination for reporting and resisting wage and hour violations as prohibited by ORS 652.355 ("Third Claim");

(4) retaliation for FLSA activity in violation of 29 USC § 215(3) ("Fourth Claim");

(5) retaliation for resisting unlawful discrimination in violation of ORS 659A.030 ("Fifth Claim"); and

(6) wrongful discharge ("Sixth Claim") for resisting wage and hour violations (Count One) and unlawful discrimination (Count Two).

This court has jurisdiction over Paugh's federal statutory claims under 28 USC § 1331 and jurisdiction over his supplemental state law claims pursuant to 28 USC § 1367(c). Both parties have consented to allow a Magistrate Judge to enter final orders and judgment in this case in accordance with FRCP 73 and 28 USC § 636(c).

King Henry's has now filed a Motion for Partial Summary Judgment (docket #42) against the Third Claim and against both Counts One and Two of the Sixth Claim or, in the alternative, against the demands for punitive damages in the Third and Sixth Claims. For the reasons that follow, that motion is GRANTED as to Paugh's claim for punitive damages in the Third Claim and as to Count One of the Sixth Claim, and otherwise is DENIED.

///

## DISCUSSION

I.     **Undisputed Material Facts**

King Henry's is an Oregon corporation that packages and ships snack products. Henry Davidian ("Davidian") is the president of Kin Henry's.

Paugh was employed by King Henry's twice. The first period was about 16 months from October 1999 to February 2001. He was rehired as the plant manager on June 2, 2003, and terminated on December 17, 2003. As the plant manager, Paugh supervised the production manager, production supervisor, and numerous production employees.

Around August 2003, Paugh raised an issue about his status as an exempt employee under the federal and state wage and hour laws. He also suggested that the production supervisor, Hilda Rodriguez ("Rodriguez"), and production manager, Guadalupe Quesada ("Quesada"), among others, were improperly classified as exempt employees. King Henry's consulted with Gary Barnes ("Barnes") of Northwest Food Employers, an independent organization that provides personnel and labor relations services to the food processing industry. Barnes advised that Paugh was exempt, but that Rodriguez and Quesada were not. King Henry's then changed Rodriguez and Quesada to hourly employees.

In the summer of 2003, Paugh told Davidian that he was inquiring into purchasing a distribution route while maintaining his job as plant manager. Although Davidian told Paugh it would be difficult to work for King Henry's full time and also run a distribution route, he was supportive of the idea and gave Paugh advice about how to proceed.[1] By November 2003, Paugh

---

[1] Davidian asserts that in August 2003, he told Paugh that he could not work full time at King Henry's while trying to manage a distribution route and was concerned that doing so would be a conflict of interest. In contrast, Paugh contends that Davidian was "supportive" of his interest in purchasing a distributorship, offered advice, was willing to help him purchase the

(continued...)

had discussions with Russ Nelson ("Nelson"), a distributor for King Henry's, about purchasing several local King Henry's distributing routes. They also discussed Paugh dealing with the store managers, resets and general maintenance, and the need to involve a third party to finance the deal.

Paugh contends that he never considered the notion of competition with King Henry's when he was considering the purchase of Nelson's distribution route. Instead, he intended to purchase the distribution route, have Nelson continue to run it so that Paugh could focus on his job at the plant, and have the route grow. Nelson was concerned that Davidian did not like him and asked Paugh what they would do if King Henry's would not sell product to them. Paugh did not consider that likely. Instead, he believed that his purchase of the distribution route would be beneficial to King Henry's, a belief that Davidian shared.

By late November 2003, Paugh gave up on the possibility of purchasing Nelson's route because he was having difficulty obtaining the necessary financial information from Nelson. Paugh was approached by other distributors who said they wanted to sell their routes, but none of those conversations materialized into any further action. Paugh made Davidian aware of those conversations.[2]

---

[1](...continued)
route, and offered to provide financial information on the route. King Henry's maintains that it ceased being "supportive" of Paugh's plans to purchase a distributorship in early November 2003, when it learned that Paugh intended to purchase a distributorship while remaining employed with King Henry's. This prompted Davidian to lose trust in Paugh and initiate an investigation into Paugh's activities, with the intention of terminating his employment. Because these are disputed facts, this court must accept Paugh's version.

[2] Again Davidian disputes that he was aware Paugh was continuing to pursue the purchase of a distributorship after their August 2003 conversation. Davidian asserts that in November 2003, he decided to fire Paugh for his lack of candor and initiated an investigation of Paugh's activities. Davidian also asserts that he spoke with Barnes in early December 2003 about discharging Paugh and that Barnes agreed that discharge was appropriate.

On December 15, 2003, Nelson sent an e-mail to Mike Doney ("Doney"), then a sales manager for King Henry's, discussing Paugh's plans to open up a snack food distributorship. That e-mail stated that Paugh planned to buy out all of the local distributors and "professionalize" the distribution and that the tentative name of the distributorship was Royal Snacks, Inc. Doney immediately forwarded the e-mail to Davidian who felt it was proof of Paugh's dishonesty. Davidian then felt ready to move forward with Paugh's discharge, but first wanted to arrange for Barnes from Northwest Food Employers to be present for the discharge.

On the morning of December 17, 2003, Paugh met with Davidian to discuss several issues. This meeting was not spontaneous, but had been scheduled by Paugh several days earlier. Paugh had been concerned about the wage and hour discrimination issues regarding other employees for some time and also wanted to inform Davidian that he was owed back overtime wages.

In this meeting which lasted over an hour, Paugh contends that he told Davidian that he was entitled to $10,000 to $15,000 in back overtime wages. He also raised issues regarding Davidian's treatment of Hispanic employees and various wage and hour issues. According to Paugh, Davidian, who is of Armenian descent, frequently engaged in racially and ethnically offensive behavior. Other employees complained that he made derogatory comments about Hispanics, African Americans, and Jews and that he gave preferential treatment to Armenian employees such as Henry Thomassian who was getting more hours than Hispanic employees.

Paugh also discussed a comment by Davidian to Paugh about Hispanics being poor workers and lazy.[3]

Later that day, after again consulting with Barnes, Davidian decided to immediately terminate Paugh. Barnes went to King Henry's plant and helped prepare a termination letter that was given to Paugh that same day.

## II. Third Claim – ORS 652.355

Paugh's Third Claim alleges a violation of ORS 652.355 which provides as follows:

> (1) No employer shall discharge or in any other manner discriminate against any employee because:
>     (a) The employee has made a wage claim or discussed, inquired about or consulted an attorney or an agency about a wage claim . . . .

King Henry's seeks summary judgment against this claim on the basis that Paugh did not file a wage claim or discuss or consult with an attorney about a wage claim. Although Paugh did not file a wage claim or consult with an attorney, he did raise the prospect of a wage claim with his employer. Paugh first raised the issue in August 2003. Although Rodriguez and Quesada were later reclassified, Paugh and other employees were not. As confirmed by testimony from Paugh, Barnes, and Davidian, Paugh again discussed his entitlement to back overtime wages in a meeting with Davidian the morning of December 17, 2003, and was summarily fired later that same day.

"[T]he statute prohibits either termination or discrimination because an employee has made or is considering making a wage claim." *Brown v. American Prop. Mgmt. Corp.*, 167 Or

---

[3] Davidian asserts that during their meeting, Paugh also talked about the distributorship issue and asked "for his non-compete back," but that Davidian refused to release him from what he believed was a valid noncompetition agreement and told him so. However, Paugh denies that he had any intention of competing with King Henry's and denies that he asked "for his non-compete back" during his meeting with Davidian.

App 53, 59, 1 P3d 1051, 1055, *review withdrawn*, 331 Or 334, 19 P3d 354 (2000). Contrary to the position taken by King Henry's, the statute does not require that a plaintiff first file a wage claim or consult an attorney. Instead, its plain language applies to an employee who has "discussed" or "inquired about . . . a wage claim." Because Paugh "discussed" and "inquired about" past due compensation under Oregon's wage and hour laws with Davidian, he made a valid wage claim under ORS 652. 355. Although Davidian claims that he had another reason to fire Paugh, the record contains a genuine issue of material fact as to whether the actual reason was Paugh's potential wage claim. Accordingly, summary judgment in favor of King Henry's on the merits of the Third Claim is inappropriate.

Alternatively, King Henry's seeks summary judgment against the punitive damage allegation in the Third Claim. Under ORS 652.355(2), employers who discharge an employee because the employee makes a wage claim are "liable to the employee discharged . . . for *actual damages* or $200, whichever is greater" (emphasis added). Neither ORS 652.355(2) expressly allows, nor has Paugh cited any case which allows, the recovery of punitive damages under this statute. The Oregon legislature regularly distinguishes "actual" from "punitive" damages.[4] This court is persuaded that, had the Oregon legislature intended to allow the recovery of punitive damages, it would have expressly included those damages in the remedial provision of ORS 652.355(2).

---

[4] *See, e.g.*, ORS 30.184 (in civil action for taking of or tampering with utility services, "[t]he utility may recover punitive damages in addition to actual damages"), 97.760 (in action for the willful removal, mutilation, defacement, injury or destruction of any cairn, burial, human remains, funerary object, sacred object, or object of cultural patrimony of any native Indian, under ORS 97.745, "punitive damages may be recovered without proof of actual damages"), 105.831 (in action for damages for injury to mining claim, the court "shall award actual damages" and in "an appropriate case . . . may award punitive damages"), 419A.262(23) (in action for violation of the confidentiality provisions of expunction statute, "punitive damages . . . may be sought in addition to any actual damages"), 646.641 (in action for unlawful debt collection practice, plaintiff may recover "actual damages or $200, whichever is greater" and "court or the jury may award punitive damages").

In the absence of any punitive damages provision in ORS 652.355 and the lack of case law supporting an award of such damages, King Henry's is entitled to summary judgment against Paugh's request for punitive damages in the Third Claim. Accordingly, paragraph 35 in the Third Claim of the Amended Complaint is stricken.

### III. Sixth Claim – Wrongful Discharge

#### A. Retaliation for Resisting Wage and Hour Violations (Count One)

Count One of the Sixth Claim alleges that Paugh was wrongfully discharged for reporting and resisting wage and hour law violations. King Henry's seeks dismissal of this common law claim because adequate remedies exist for the same alleged conduct under ORS 652.355.

##### 1. Legal Standard

The question of whether a terminated employee can bring a wrongful discharge claim is "a gnarly one." *Farrington v. Pepsi-Cola Bottling Co. of Bend*, 2004 WL 817356, *2 (D Or February 25, 2004). In Oregon, the tort of a wrongful discharge is designed to "serve as a narrow exception to the at-will employment doctrine in limited circumstances where the courts have determined that the reasons for the discharge are so contrary to public policy that a remedy is necessary in order to deter such conduct." *Draper v. Astoria Sch. Dist. No. 1C*, 995 F Supp 1122, 1127 (D Or 1998),[5] citing *Walsh v. Consolidated Freightways, Inc.*, 278 Or 347, 351-52, 563 P2d 1205, 1208 (1977) and *Sheets v. Knight*, 308 Or 220, 230-31, 779 P2d 1000, 1006 (1989). It "never was intended to be a tort of general application but rather an interstitial tort to provide a remedy when the conduct in question was unacceptable and no other remedy was available." *Draper*, 995 F Supp at 1128, citing *Walsh,* 278 Or at 351-53, 563 P2d at 1208-09.

---

[5] Another issue decided by *Draper* concerning exemption from a damages cap of claims under the Whistleblower Law was abrogated in *Rabkin v. Oregon Health Sciences Univ.*, 350 F3d 967, 972 (9th Cir 2003).

8 - OPINION AND ORDER

As a result, this tort has been has been recognized only where an employee is terminated for: (1) performing a public duty or fulfilling a societal obligation (*Delaney v. Taco Time Int'l*, 297 Or 10, 15-17, 681 P2d 114, 117-18 (1984) (refusing to sign a false report defaming a co-worker); *Nees v. Hocks*, 272 Or 210, 219, 536 P2d 512, 516 (1975) (serving on jury duty)); or (2) exercising an employment related right of an important public interest (*Holien v. Sears, Roebuck & Co.*, 298 Or 76, 90-97, 689 P2d 1292, 1299-1304 (1984) (resisting unlawful sexual harassment); *Brown v. Transcon Lines*, 284 Or 597, 588 P2d 1087 (1978) (filing a workers' compensation claim)).

However, this additional remedy is not available "if (1) an existing remedy adequately protects the public interest in question, or (2) the legislature has intentionally abrogated the common law remedies by establishing an exclusive remedy (regardless of whether the courts perceive that remedy to be adequate)." *Draper*, 995 F Supp at 1130-31.

### 2. **Adequate Remedy**

Paugh alleges that he was wrongfully discharged for complaining about wage and hour violations of Oregon law, conduct which seems to fall within the permissible scope of this narrow tort. Nevertheless, citing *Carlson v. Crater Lake Lumber* Co, 103 Or App 190, 796 P2d 1216 (1990), *modified on other grounds*, 105 Or App 314, 804 P2d 511 (1991), King Henry's argues that a wrongful discharge claim is not available because Oregon's wage and hour laws, ORS 652.355, provide adequate remedies for such conduct.

In *Carlson*, one of the plaintiffs brought a wrongful discharge claim, alleging that she was constructively discharged in retaliation for asserting a wage claim. The Court of Appeals affirmed summary judgment for the employer against this claim. It distinguished between the

nature of the injury caused by resisting wage and hour law violations and by resisting sexual harassment:

> There is, however, an adequate statutory remedy that protects the rights of employees to make good faith wage claims. ORS 652.355. The nature of the injury that an employee who asserts a wage claim and is discharged for doing so suffers is not comparable to the "personal nature" of the injury that an employee suffers who endures sexual harassment and is then fired for resisting the harassment.

*Id*, 103 Or App at 195, 796 P2d at 1220, citing *Holien*, 298 Or at 97, 698 P2d at 1304; *accord*, *Lundervold v. Core-Mark Int'l, Inc.*, 1997 WL 907915, *4 (D Or Jan 17, 1997).

Although *Carlson* would seem to foreclose Paugh's wrongful discharge claim, later rulings by this court have declined to follow *Carlson*. In *Nash v. Resources, Inc.*, 1997 WL 594472 (D Or April 2, 1997), Judge Redden concluded that the plaintiff could pursue a wrongful discharge claim in addition to the statutory remedy available in ORS 652.355. He did not deem *Carlson* dispositive because it "did not analyze the issue of how ORS 652.355 could be considered an adequate remedy for retaliatory discharge when ORS 652.380 explicitly mandates the use of other remedies to supplement ORS 652.355." *Id* at *2. Pursuant to ORS 652.380(1), the remedies of OSR 652.355 "shall be additional to and not in substitution for and in no manner impair other remedies and may be enforced simultaneously or consecutively so far as not inconsistent with each other." Because ORS 652.355 does not expressly preclude the additional remedy of wrongful termination premised upon termination for making a wage claim, Judge Redden concluded that *Carlson* conflicts with the following standard set forth by the Oregon Supreme Court:

> An actionable common law tort remains actionable unless the provisions of the allegedly conflicting legislation demonstrate the legislatures intent not only to provide what it considered to be adequate remedies to plaintiff,

> but by implication show a legislative intent to abrogate or supersede any
> common law remedy for damages.

*Shockey v. City of Portland*, 313 Or 414, 419-20, 837 P2d 505, 508 (1992), quoting *Holien*, 298 Or at 90-91, 689 P2d at 1300.

A federal court must follow the decisions of the state's highest court on matters of state law unless there is convincing evidence that the state court would itself reach a different conclusion. *New Hampshire Ins. Co. v. Vieira*, 930 F2d 696, 701 (9th Cir 1991). Applying the standard established by the Oregon Supreme Court, rather than *Carlson*, Judge Redden held that ORS 652.355 was not plaintiff's exclusive remedy and did not discuss whether it provides an adequate remedy.

At that time, Judge Redden did not have the benefit of the later analysis by *Draper* of the erratic course of the development of the wrongful discharge tort in Oregon. *Draper* concluded that when permitting a wrongful discharge claim, Oregon courts consider both the legislature's intent to create an exclusive remedy and the adequacy of the existing remedies. Judge Redden addressed only the first consideration and not the second consideration.

More recently in *Marshall v. May Trucking Co.*, 2004 WL 1050870, **5-7 (D Or April 6, 2004), Judge Brown addressed both prongs of the *Draper* analysis and held that ORS 652.355 did not bar a claim for wrongful discharge based on filing a claim for statutory overtime wages. She agreed with the conclusion in *Nash* that ORS 652.355 was not intended by the legislature to be an exclusive statutory remedy. *Id* at *7. She also concluded that the statutory remedy in ORS 652.355 was not adequate because, unlike a wrongful discharge claim, it "does not authorize punitive damages" and "also has no provision for noneconomic compensatory damages." *Id* at *6. Based on the focus in *Holien* on the "personal nature of the

11 - OPINION AND ORDER

injury (*i.e.*, the financial and emotional consequences of the loss of employment), rather than on the personal nature of the employer's conduct (*i.e.*, sexual harassment)," she found that "the statutory remedy is limited to out-of-pocket damages and, by omitting any provision for noneconomic compensatory damages, does not take into account the personal impact of the loss of a job." *Id*.

If the statutory remedy is limited to out-of-pocket damages, then this court would agree with *Marshall* that, despite *Carlson*, ORS 652.355 provides an inadequate remedy. However, contrary to the assumption made in *Marshall*, ORS 652.355 does allows the recovery of noneconomic compensatory damages. Although ORS 652.355 provides only for an award of "actual damages," which is not defined in the statute, the Oregon Court of Appeals has ruled that "actual damages" encompass both economic and noneconomic damages. *Brown v. American Prop. Mgmt.*, 167 Or App at 59-60, 1 P3d at 1055-56.

Therefore, the remedy available under ORS 652.355 differs from the remedy available under a wrongful discharge claim in only two respects; it allows the recovery of attorney fees but omits the right to recover punitive damages. The question then becomes whether that legislative choice supports a conclusion that the statutory remedy is inadequate to protect the societal interests at stake. Although the issue is not free from doubt, this court concludes that the statutory remedy provided by ORS 652.355 is adequate and precludes a wrongful discharge claim premised on reporting and resisting wage and hour law violations.

The question is not whether the existing remedy is the best possible remedy or identical to the tort remedy, but merely whether it is sufficient to "adequately protect the employment related right." *Carlson*, 103 Or App at 193, 796 P2d at 1219. "[W]here an adequate existing

remedy protects the interests of society . . . an additional remedy of wrongful discharge will not be accorded." *Delaney,* 297 Or at 16, 681 P2d at 118.

As explained by *Holien*, the focus of the inquiry is the "personal nature of the injury done to a wrongfully discharged employe[e] as an individual . . . such as anguish, physical symptoms of stress, a sense of degradation, and the cost of psychiatric care. Legal as well as equitable remedies are needed to make the plaintiff whole." *Holien*, 298 Or at 97, 689 P2d at 1303-04. Noneconomic or compensatory damages are designed to make an individual whole by fully compensating for such injuries. Punitive damages, on the other hand, focus on the defendant's conduct and are designed to deter and punish the defendant. Although our society has an interest in punishing employers who discharge employees who make wage claims, the threat of punitive damages is not the only means to achieve that goal. That goal also is accomplished by the very existence of ORS 652.355 which imposes liability on an employer who engages in such socially undesirable conduct.

Furthermore, the omission of punitive damages in ORS 652.355 is largely offset by the employee's ability to recover attorney fees. Given the ability to recover attorney fees, an employee is provided a financial incentive to enforce ORS 652.355 and ensure an employer's compliance with the law. As a result, society's interest in promoting public policy is considerably fostered. Absent this statute, an employee instead would be limited to filing a wrongful discharge claim which lacks the financial incentive provided by a recovery of attorney fees, but bestows the prospect of recovering punitive damages.[6] The threat of facing a punitive damage award is a strong disincentive to employers to fire employees who make wage claims.

---

[6] Under Oregon law, 40% of a punitive damage award is paid to the plaintiff; the remaining 60% is paid to the State of Oregon. ORS 18.540(1).

13 - OPINION AND ORDER

Thus, the ability to recover attorney fees under ORS 652.355 and the ability to recover punitive damages under a common law wrongful discharge claim serve effectively this same public purpose.

Although the remedies are not identical, this court concludes that the remedies available under ORS 652.355 are adequate to compensate for the personal nature of the injury done to a wrongfully discharged employee for reporting and resisting a wage and hour law violation.[7] Thus, King Henry's motion directed at Count One of the Sixth Claim is granted.

### B. Resisting Unlawful Discrimination (Count Two)

Count Two of the Sixth Claim alleges that Paugh was wrongfully discharged for resisting discrimination based on race or national origin. Paugh does not allege that he is a member of a protected class or that he was discriminated against because of his national origin or race. Instead, he asserts that he was fired because he complained about discrimination by Davidian against other employees based on national origin or race. King Henry's contends that individuals who complain about the alleged treatment of other employees, but who are not themselves the victims of allegedly discriminatory practices, cannot state a wrongful discharge claim.

The facts alleged here are strikingly similar to those alleged in *Thomas v. City of Beaverton*, 379 F3d 802 (9th Cir 2004). In *Thomas,* the plaintiff alleged she had been terminated in retaliation for resisting race discrimination against another employee. The Ninth Circuit affirmed summary judgment against the wrongful discharge claim, explaining only that plaintiff

---

[7] Paugh does not allege in his Amended Complaint that he experienced any emotional distress and seeks only the recovery of economic and punitive damages. However, this court must analyze the availability of a wrongful discharge claim in light of the possible remedies, not merely the damages sought by any individual plaintiff.

"did not suffer the kind of personal injury that would warrant providing a common law remedy of wrongful discharge in addition to the existing state and federal statutory remedies for retaliation." *Id*, 379 F3d at 813, citing *Carlson*.

Paugh argues that reliance on *Thomas* is misplaced because *Carlson*, upon which *Thomas* relies, is easily distinguishable. In *Carlson*, several family members worked for the same employer. The mother claimed that she was constructively discharged in retaliation for asserting a wage claim. As discussed above, the Oregon Court of Appeals rejected her wrongful discharge claim because the nature of her injury was "not comparable to the 'personal nature' of the injury that an employee suffers who endures sexual harassment and is then fired for resisting the harassment," as in *Holien*. *Carlson*, 103 Or App at 195, 706 P2d at 1220. In addition, the other family members alleged that they were wrongfully discharged in retaliation for the mother's assertion of her employment rights. The Oregon Court of Appeals held that these claims by the other family members also lacked merit because they "were not sexually harassed or discharged for resisting sexual harassment. Even if they were discharged in retaliation for [the mother's] resistance to sexual harassment, they did not suffer the kind of "personal" injury that *Holien* described." *Id,* 103 Or App at 196, 706 P2d at 1220.

Unlike *Carlson*, Count Two of Paugh's wrongful discharge claim is not premised on being associated with another employee who filed a wage claim. Instead, he claims that he was wrongfully discharged for asserting important employment rights on behalf of other employees. Paugh compares himself to the plaintiff in *McQuary v. Bel Air Convalescent Home, Inc.*, 69 Or App 107, 684 P2d 21, *review denied*, 298 Or 37, 688 P2d 845 (1984), who was fired after threatening to report her employer to the appropriate state agency for alleged mistreatment of a nursing home patient. *McQuary* concluded that the plaintiff had a potential wrongful discharge

15 - OPINION AND ORDER

claim because she was discharged for fulfilling a societal obligation. Similarly, Paugh claims that he was discharged for fulfilling a societal obligation of reporting race discrimination by his employer.

Public policy certainly would be furthered by allowing Paugh to bring a wrongful discharge claim for King Henry's alleged retaliatory conduct. Although Paugh did not personally suffer any race or national origin discrimination and its attendant injuries, he was allegedly punished by being terminated from his employment for attempting to protect other employees whom he supervised. From the standpoint of protecting individuals who resist employment discrimination, this court does not perceive a bright line between victims and other employees who stand up for the victims. Instead, as prescribed by *Draper*, this court must engage in a two-part analysis to determine if the wrongful discharge remedy, in addition to the statutory remedy, is available. *McQuary* did not engage in that analysis and likely was not compelled to do so because the plaintiff had no statutory remedy. The Ninth Circuit also failed to engage in that analysis in *Thomas*.

Here Paugh has two potential statutory remedies: (1) a claim under ORS 659A.030(1)(a) for unlawful retaliation, as alleged in his Fifth Claim,[8] and (2) a claim for retaliation under Title VII of the Civil Rights Act of 1964, 42 USC § 2000e-3(a) ("Title VII"), which he does not allege.[9] Although Paugh does not allege a claim for violation of Title VII, this court must consider the general availability of its remedy, even if, for whatever reason, Paugh fails to take advantage of it. Thus, this court must determine if "(1) an existing remedy adequately protects

---

[8] ORS 659A.030(1)(f) makes it an unlawful employment practice "[f]or an employer to discharge, expel or otherwise discriminate against any other person because that other person has opposed any unlawful employment practice . . ."

[9] 42 USC § 2000e-3(a) prohibits discrimination against any applicant or employee "because he has opposed any practice made an unlawful employment practice by [Title VII]."

the public interest in question, or (2) the legislature has intentionally abrogated the common law remedies by establishing an exclusive remedy (regardless of whether the courts perceive that remedy to be adequate)." *Draper*, 995 F Supp at 1130-31.

This court has already determined that the remedy under Title VII is inadequate to compensate an employee who is discharged in retaliation for opposing discrimination due to the caps on compensatory and punitive damages. Compensatory damages are intended to make the plaintiff whole, and capping such damages based on the size of the employer does not necessarily permit a plaintiff to make an adequate recovery. *See, e.g., Oelke v. Costco Wholesale Corp.*, 2005 WL 1173311 *2 (D Or April 26, 2005); *Hand v. Fred Meyer, Inc*, Civil No. 96-92-ST (April 8, 1996); *Coleman v. Pig 'n Pancake, Inc.,* Civ. No. 94-405-ST (January 22, 1996); *Russell v. Bob Frink Chevrolet, Inc.,* No. 95-252-PA; *Chandos v. Palmer, Groth & Pietka, Inc.,* No. 95-1473-JE. Moreover, Title VII is a supplemental remedy and not intended to supersede any other common law claim. 42 USC § 2000e-7.

Similarly, the statutory remedy for violating ORS 659A.030 is inadequate to protect employees from a wrongful discharge caused by resisting employment discrimination. Under ORS 659A.885(1), only the equitable remedies of injunction, reinstatement, two years back pay, as well as attorney fees and costs, are available for a violation of ORS 659A.030; no compensatory or punitive damages are recoverable. Additionally, when analyzing Oregon law, the legislature did not intentionally abrogate the common law remedies by establishing an exclusive remedy. "Because Oregon courts will not read a limitation regarding the adequacy and exclusivity of a remedy into a statute 'without its containing a clear statement to that effect,' remedies provided by Title VII cannot be regarded as having been intended to preempt remedies available under common law claim." *Hand v. Fred Meyer, Inc*, Civil No. 96-92-ST, *4 (April

17 - OPINION AND ORDER

8, 1996), quoting *McCool v. Hillhaven Corp.,* 97 Or App 536, 540, 777 P 2d 1013, *review denied,* 308 Or 593, 784 P2d 1100 (1989).

Needless to say, this court is reluctant to reach a conclusion contrary to the Ninth Circuit in *Thomas*. However, when state law applies to an issue, federal courts must interpret and apply state law as would the highest state court. *See S.D. Myers, Inc. v. City & County of San Francisco*, 253 F3d 461, 473 (9th Cir 2001). If no decision by the state's highest court is available to guide the federal court's interpretation of state law, the federal court must predict how the state court would decide the issue by using intermediate appellate court decisions, decisions for other jurisdictions, statutes, treatises, and restatements as guidance. *Id*; *see also Bogosian v. Woloohojian Realty Corp.*, 323 F3d 55, 71 (1st Cir 2003) ("Absent state-court case law on point, wherever practicable we undertake a fair prediction as to the course the highest state court would take were it presented with the same legal issue"); *Boyanowski v. Capital Area Intermediate Unit*, 215 F3d 396, 406 (3rd Cir), *cert denied*, 531 US 1011 (2000) ("In predicting how a matter would be decided under state law we examine: [state Supreme Court decisions] in related areas; (2) the decisional law of the [state] intermediate courts; (3) federal appeals and district court cases interpreting the state law; and (4) decisions from other jurisdictions that have discussed the issues we face here."). Doing so leads this court to conclude that Paugh can pursue a potential wrongful discharge claim as alleged in Count Two of the Sixth Claim.

### B. Punitive Damages in Sixth Claim

King Henry's also seeks summary judgment against Paugh's requests for punitive damages alleged in paragraphs 54 (Count One) and 60 (Count Two) of the Sixth Claim.

Punitive damages are not available to Paugh unless he proves by clear and convincing evidence that King Henry's "acted with malice or . . . a reckless and outrageous indifference to a highly unreasonable risk of harm and has acted with a conscious indifference to the health, safety and welfare of others." ORS 31.730(1). King Henry's argues that Paugh cannot show that its alleged acts were committed with malice or reckless and outrageous indifference to the rights of others. However, the record reveals a glaring factual dispute over the reasons Davidian terminated Paugh. Paugh contends that his termination resulted from Davidian's anger that Paugh continued to press his entitlement to back overtime pay and object to what he perceived to be discriminatory treatment of his Mexican coworkers. A factual dispute over the defendant's motive precludes summary judgment on the issue of punitive damages. *R & C Ranch LLC v. Kunde*, 180 Or App 314, 318-19, 44 P3d 607, 609 (2002); *Harm v. Central Life Assur. Co.*, 107 Or App 708, 715, 813 P2d 1103, 1107 (1991).

Accordingly, to the extent it seeks summary judgment against the requests for punitive damages in the Sixth Claim, King Henry's motion for summary judgment is denied.

## **ORDER**

For the reasons set forth above, defendant's Motion for Partial Summary Judgment (docket #42) is GRANTED against the claim for punitive damages alleged in the Third Claim and against Count One of the Sixth Claim and otherwise is DENIED.

DATED this 30th day of June, 2005.

/s/ Janice M. Stewart_____
Janice M. Stewart
United States Magistrate Judge